IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LESTER LEFKOWITZ ) | |
| ) | Case No. |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| JOHN WILEY & SONS, INC. ) | |
| ) | |
| ) | |
| ) | |
| Defendant. ) | |

**COMPLAINT**
(Jury Trial Demanded)

Plaintiff Lester Lefkowitz ("Lefkowitz") for his Complaint against Defendant John Wiley & Sons, Inc. ("Wiley") alleges:

**STATEMENT OF ACTION**

1. This is an action for copyright infringement brought by Lefkowitz, the holder of all copyrights to the photographs described hereafter and originally licensed for limited use by Wiley, and breach of contract, against Defendant for uses of Plaintiff's photographs without his authority or permission.

**PARTIES**

2. Lester Lefkowitz is an independent professional photographer who is a United States citizen and who resides in New York.

3. Wiley is a corporation organized under the laws of the State of New York, with its principle place of business and domicile located at 111 River Street, Hoboken NJ 07030. Wiley

sells and distributes textbooks via its employees and agents throughout the United States and in the Eastern District of Pennsylvania, including the publications in suit and ancillary materials in which Lefkowitz's photographs are unlawfully reproduced.

## JURISDICTION

4. This is an action for injunctive relief, statutory damages, monetary damages, and interest under the copyright laws of the United States and New York common law. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 (federal question), 1367 (supplemental jurisdiction over related contract claims that are part of the same case or controversy), and 1338 (copyright).

## VENUE

5. Venue is appropriate in this District pursuant to 28 U.S.C. §§ 1391(a) and (b) and 28 U.S.C. §§ 1400(a).

## FACTS COMMON TO ALL COUNTS

6. Wiley was founded in 1807 and is a global publisher providing content and services to customers worldwide. One of Wiley's core businesses pertains to the publication of educational materials, including textbooks, for undergraduate and graduate students.

7. Wiley's textbooks and other educational publications generally contain contributions from multiple sources, such as photographs licensed to Wiley by third parties.

8. Lefkowitz is the owner of an exclusive right under the copyright in the attached photographic images ("Photographs") depicted in Exhibit 1.

9. The Photographs have been registered with the United States Copyright Office. Registration information for each Photograph is included in Exhibit 1.

10. Lefkowitz entered into contractual agreements ("the Agreements") with The Stock Market ("TSM"), a stock-photo licensing agency, on or about June 23, 1997 (Exhibit 2), and on or about July 27, 2000 (Exhibit 3). The Agreements authorized TSM to issue limited licenses for use of Lefkowitz's images by third parties, in exchange for reasonable license fees.

11. The Agreements appointed TSM as Lefkowitz's "exclusive agent . . . with respect to the licensing of [his] stock images." (Exhibit 2, ¶ 1(a); Exhibit 3, ¶ 1(a)). The Agreements specified that TSM would not license any images "on a buy-out or exclusive basis" without prior consent. (Exhibit 2, ¶ 1(d); Exhibit 3, ¶ 1(d)).

12. The TSM Agreement was assigned to Corbis Corporation ("Corbis") in 2000. (Exhibit 4). Lefkowitz permitted the Agreement to be assigned to Corbis only "with the understanding that all the terms and conditions of my current contract with The Stock Market will remain in full force and effect." (Exhibit 3).

13. Lefkowitz later entered into a representation agreement with Corbis, which authorized Corbis to grant third parties limited use licenses for his photographs. A true and correct copy of the agreement between Lefkowitz and Corbis ("Corbis Agreement") is attached hereto as Exhibit 5.

14. Lefkowitz did not permit TSM to grant royalty-free, unlimited licenses of his works. *See* Exhibit 6 hereto, letter opting out of TSM's royalty free program.

15. Lefkowitz did not permit Corbis to grant royalty-free, unlimited or "Broad Rights" licenses of his works. The Corbis Agreement required Corbis to obtain Lefkowitz's written permission prior to using his images for Broad Rights licensing (*see* Exhibit 5, p. 9), which Lefkowitz did not grant.

16. Upon information and belief, between 1999 and 2011 and in response to permission requests from Wiley, TSM and Corbis sold Wiley limited licenses to use copies of the Photographs in numerous educational publications. *See* Exhibit 1, which is a summary report of information from Lefkowitz's royalty statements from TSM and Corbis. Exhibit 1 identifies Lefkowitz's image ID; copyright registration number and date; the TSM or Corbis Invoice number and date; and the Wiley imprint that licensed Lefkowitz's image(s).

17. Upon information and belief, the licenses granted to Wiley from TSM and Corbis were expressly limited by number of copies, distribution area, image size, language, duration and/or media (print or electronic).

18. Upon information and belief, at the time Wiley represented to TSM and Corbis that it needed specified, limited licenses to use Lefkowitz's photographs, Wiley often knew its actual uses under the licenses would exceed the usage rights it was requesting and paying for.

19. Upon information and belief, Wiley exceeded the permitted uses under the terms of the limited licenses for the publications identified in Exhibit 1, and for other publications yet to be discovered.

20. Wiley alone knows the full extent to which it has infringed Lefkowitz's copyrights by violating his license limits. Despite this superior knowledge, Wiley, the sole source of information about its unauthorized uses, refuses to disclose its uses to copyright holders.

*Wiley's Pattern of Infringement*

21. Wiley's practice of infringing copyrights extends beyond the publications in Exhibit 1. While the lost licensing fee to any individual copyright holder is relatively small, Wiley has sold and distributed millions of these publications, generating billions in revenue and

4

profits. Wiley's business model, built on a foundation of pervasive and willful copyright infringement, deprived Lefkowitz and thousands of other visual art licensors of their rightful compensation, and unjustly enriched Wiley with outlandish profits in the process.

22. Wiley did not simply take the intellectual property of photographers, artists, and illustrators without a license. Instead, it licensed the copyrighted works of others for low numbers of reproductions, but surreptitiously copied them many times beyond the agreed-upon license limit. This lulled licensors into a false sense of trust; if photographers saw their licensed works reproduced in a Wiley textbook, they suspected nothing untoward. And, the licensing of a specific number of copies created the expectation that additional uses by Wiley would be requested and paid for if more copies were made. By this contrivance, Wiley fraudulently concealed its wrongdoing by throwing licensors, including Lefkowitz, "off the scent."

23. On information and belief, Wiley has a general practice of infringing copyrights in its use of photographs in its publications. Wiley has been sued for copyright infringement in furtherance of the scheme described above in at least the following actions:

- *John Wiley & Sons, Inc. v. Hiser*, No. 09-cv-04307 (S.D.N.Y);
- *Grant Heilman v. John Wiley & Sons, Inc.*, No. 11-cv-01655 (E.D. Pa.);
- *Visuals Unlimited, Inc. v. John Wiley & Sons, Inc.*, No. 11-cv-0415 (D.N.H.);
- *Degginger et al. v. John Wiley & Sons, Inc.*, No. 11-cv-06600 (E.D. Pa.);
- *Bean v. John Wiley & Sons, Inc.*, No. 12-cv-8001 (D. Ariz.);
- *DRK Photo v. John Wiley & Sons, Inc.*, No. 11-cv-8133 (D. Ariz.);
- *Psihoyos v. John Wiley & Sons, Inc.*, No. 11-cv-01416 (S.D.N.Y.);
- *Frerck v. John Wiley & Sons, Inc.*, No. 11-cv-2727 (N.D. Ill.);
- *Cole v. John Wiley & Sons, Inc.*, No. 11-cv-02090 (S.D.N.Y.);
- *Warren v. John Wiley & Sons, Inc.*, No. 12-cv-05070 (S.D.N.Y);
- *Rubin v. John Wiley & Sons, Inc.*, No. 12-cv-05071 (S.D.N.Y);
- *Young-Wolff v. John Wiley & Sons, Inc.*, No. 12-cv-05230 (S.D.N.Y.);
- *Muench Photography, Inc. v. John Wiley & Sons, Inc.*, No. 12-cv-07502 (S.D.N.Y.);
- *Beasley v. John Wiley & Sons, Inc.*, No. 12-cv-08715 (N.D. Ill.);
- *Panoramic Stock Images, LTD. V. John Wiley & Sons, Inc.*, No. 12-cv-10003 (N.D. Ill).

24. Evidence submitted to the courts in the above actions demonstrates that Wiley has engaged in a systematic pattern of fraud and copyright infringement.

25. In *Psihoyos v. John Wiley & Sons, Inc.*, No. 11-cv-1416 (S.D.N.Y.), on August 1, 2012, a jury found Wiley liable for two counts of willful copyright infringement for engaging in the copyright infringement scheme described herein.

26. In *Bean v. John Wiley & Sons, Inc.,* No. CV 11–08028–PCT–FJM, 2012 WL 1078662 (D. Ariz. March 30, 2012), Wiley was found liable for 108 counts of copyright infringement for engaging in the copyright infringement scheme described herein.

27. A reasonable opportunity for discovery will show that Wiley's pattern of infringing copyrights encompasses Lefkowitz's Photographs.

***Copyright Infringement***

28. Lefkowitz's images were credited and upon information and belief appear in at least the following Wiley publications:

- Brian J. Skinner, Stephen C. Porter, Jeffrey Park, Dynamic Earth: An Introduction to Physical Geology (5th Ed. 2004);
- Sandra Alters, Brian Alters, Biology: Understanding Life (2006);
- Sandra Alters, Brian Alters, Biology: Understanding Life (2007);
- Sandra Alters, Brian Alters, Biology: Understanding Life (2008);
- Sandra Alters, Brian Alters, Biology: Understanding Life (JCTCS Custom Ed.);
- Sandra Alters, Brian Alters, Biology: Understanding Life (Custom Unbound Ed.);
- Sandra Alters, Brian Alters, Biology: Understanding Life (Abridged)
- Bruce T. Anderson, Alan Strahler, Visualizing Weather and Climate (2008);
- Kathleen Anne Ireland, David J. Tenenbaum, Visualizing Human Biology (2008).

29. Wiley has already been held liable for distributing photographs in excess of the licensed limits in Brian J. Skinner, Stephen C. Porter, Jeffrey Park, Dynamic Earth: An Introduction to Physical Geology (5th Ed. 2004), among other publications. *Bean v. John Wiley & Sons, Inc.,* No. CV 11–08028–PCT–FJM, 2012 WL 1078662 (D. Ariz. March 30, 2012).

30. Upon information and belief, the licensing parameters granted to Wiley for the textbooks listed above were limited and uniform. Therefore, upon information and belief, Wiley also infringed the limits in Lefkowitz's license in <u>Dynamic Earth: An Introduction to Physical Geology</u> (5th Ed. 2004).

31. Upon information and belief, Wiley has exceeded the license limits for the textbooks listed above, the textbooks relating to the invoices listed in Exhibit 1, as well as for other unlisted textbooks.

32. The royalty statements Lefkowitz received from Corbis typically included the invoice number and date, the licensor name, Corbis's image ID and description, a code for the type of use (i.e., "BOOK" or "ADMAG"), the customer (licensee) name, and the royalty calculation. The statements do not include license terms or the specific limits on how the customer may use the photographs such as number of copies, distribution area, image size, language, duration and/or media (print or electronic). The statements also usually do not state the title of the publication in which Lefkowitz's photographs will appear, or otherwise specify what use the licensor will make of Lefkowitz's photographs.

33. Exhibit 1 to the Complaint identifies the Photographs Lefkowitz alleges, upon information and belief, Wiley infringed, as well as the invoice date, after which Lefkowitz alleges, upon information and belief, Wiley infringed. Specifically, Lefkowitz alleges Wiley copied the Photographs in numbers exceeding the limited print quantities in the licenses, displayed the Photographs online or in digital media without permission to do so, distributed the Photographs in geographic territories that were not authorized, and copied the Photographs in custom, state-specific, language, or international editions without permission to do so.

34. On March 7, 2013, Lefkowitz asked Wiley to disclose its unauthorized uses of Lefkowitz's Photographs. As of the date of this filing, Wiley has not responded.

### *Contributory Copyright Infringement*

35. Upon information and belief, Wiley facilitated the international distribution of its publications, in part, through its Subsidiary Rights, Global Rights, and Permissions Departments located in Hoboken, New Jersey. Wiley's website provides catalogs of Wiley textbooks that are available for translations and adaptations. Upon information and belief, Lefkowitz's photographs are included in textbooks in these catalogs.

36. Upon information and belief, Wiley reproduced and distributed the Photographs without Lefkowitz's permission to other entities, subsidiary companies, divisions, affiliates and/or third parties ("Third Parties"). Upon information and belief, Wiley's unauthorized reproduction and distribution to the Third Parties took place in the United States.

37. Upon information and belief, the Third Parties then translated the publications at issue into additional languages or published them in local adaptations or reprints and included the Photographs in these publications without Lefkowitz's permission. By transmitting the Photographs to the Third Parties, Wiley enabled, induced, caused, facilitated, or materially contributed to the Third Parties' unauthorized reproduction and distribution of the Photographs.

38. Upon information and belief, Wiley permitted Third Parties to distribute Wiley's publications containing the Photographs in new territories, to translate its publications into new languages, and to adapt its publications for distribution in additional territories.

39. Upon information and belief, Wiley knew when it reproduced and distributed the Photographs that the Third Parties would reproduce and distribute the Photographs without Plaintiff's authorization.

40. Upon information and belief, Wiley knew that the Third Parties were reproducing and distributing Plaintiff's Photographs without authorization.

41. Upon information and belief, Wiley directly profited from its transmission of the Photographs to the Third Parties since such Third Parties paid Wiley for translation and distribution rights, including access to all of the content in the publications.

### *Breach of Contract*

42. Upon information and belief, under the Corbis-Wiley licensing agreements, Wiley is required to pay ten times the license fee for any unauthorized use of Lefkowitz's images, in addition to any other fees, damages, and penalties available to Lefkowitz. Corbis's End User License Agreements ("EULAs") effective November 19, 2001 and June 2005, attached as Exhibit 7, in virtually identical language, give Corbis the right "to bill [Wiley] (and [Wiley] hereby agree[s] to pay) ten (10) times the normal license fee for any unauthorized use, in addition to any other fees, damages, or penalties Corbis may be entitled to under this Agreement or applicable law." Upon information and belief, these EULAs were incorporated into the Corbis-Wiley licensing agreements.

43. Prior to filing this Complaint, on March 7, 2013, Lefkowitz asked Wiley if it would disclose its unauthorized uses and pay the 10 times fee as agreed in its contract with Corbis. Lefkowitz asked that Wiley respond by March 14, 2013 whether it would disclose the requested information. As of the date of this filing, Wiley has not responded.

44. Wiley knows whether, and to what extent, it has violated the Corbis-issued licenses. Despite this superior knowledge, Wiley, the sole source of information about its unauthorized uses, refuses to disclose its uses to Lefkowitz.

45. Lefkowitz (or his predecessor Corbis) has performed his part of the contracts and

satisfied any condition precedent. Wiley has frustrated Lefkowitz's ability to issue a bill for ten times the license fee for its unauthorized uses by refusing to disclose its unauthorized uses.

46. Wiley has breached the contracts by refusing to pay the 10 times fees for its unauthorized uses of Lefkowitz's images.

47. Lefkowitz and Corbis agreed that "Corbis, in its sole discretion and without obligation to do so, shall have full and complete authority to make and settle claims or to institute proceedings in Corbis' or your name but at Corbis' expense to recover damages . . . for the unauthorized use of Accepted Images . . . . Following your notification, if Corbis declines to bring such a claim within sixty (60) days, we shall notify you, and you may bring actions in your own name at your own expense and retain all recoveries." (Exhibit 5, p. 5 ¶ 6).

48. On November 16, 2011, Lefkowitz's counsel sent a letter to Corbis notifying it that Lefkowitz wished to take legal action against publishers, including Wiley, for unauthorized uses of his copyrighted work.

49. Corbis did not bring a claim against Wiley within 60 days of Lefkowitz's notice.

50. The exhibits attached hereto are incorporated into this complaint by this reference.

## COUNT I
## COPYRIGHT INFRINGEMENT

51. Lefkowitz incorporates herein by this reference each and every allegation contained in the paragraphs set forth above.

52. The foregoing acts of Wiley constitute infringements of Lefkowitz's copyrights in the Photographs in violation of 17 U.S.C. §§ 501 *et seq.*

53. Lefkowitz suffered damages as a result of Wiley's unauthorized use of the Photographs.

## COUNT II
## CONTRIBUTORY COPYRIGHT INFRINGEMENT

54. Lefkowitz incorporates herein by this reference each and every allegation contained in the paragraphs set forth above.

55. The foregoing acts of Wiley constitute contributory infringement of Lefkowitz's copyrights in the Photographs in violation of 17 U.S.C. §§ 501 *et seq*.

56. Lefkowitz suffered damages as a result of the unauthorized use of the Photographs.

## COUNT III
## BREACH OF CONTRACT

57. Plaintiff incorporates herein by this reference each and every allegation contained in the paragraphs set forth above.

58. The foregoing acts of Wiley constitute breaches of the Corbis-Wiley contracts.

59. Plaintiff suffered damages as a result of Wiley's breaches of contract.

**WHEREFORE, Plaintiff requests the following**:

1. A permanent injunction against Defendant and anyone working in concert with Defendant from copying, displaying, distributing, selling or offering to sell Plaintiff's Photographs described in this Complaint and Plaintiff's photographs not included in suit.

2. As permitted under 17 U.S.C. § 503, impoundment of all copies of Plaintiff's Photographs used in violation of Plaintiff's exclusive copyrights as well as all related records and documents and, at final judgment, destruction or other reasonable disposition of the unlawfully used Photographs, including digital files and any other means by which they could be used again by Defendant without Plaintiff's authorization.

3. An award of Plaintiff's actual damages and all profits derived from the unauthorized use of Plaintiff's Photographs or, where applicable and at Plaintiff's election, statutory damages.

4. An award of Plaintiff's reasonable attorneys' fees, under the Copyright Act or by contract.

5. An award of Plaintiff's court costs, expert witness fees, interest and all other amounts authorized under law.

6. An award of ten times the license fee for unauthorized uses.

7. Such other and further relief as the Court deems just and proper.

## Demand for Jury Trial

Plaintiff demands a trial by jury of all issues permitted by law.

Dated: March 29, 2013

Plaintiff, Lester Lefkowitz,
by his attorneys,

Maurice Harmon
Harmon & Seidman LLC
11 Chestnut Street
New Hope, Pennsylvania 18938
Tel: (917) 561-4434
maurice@harmonseidman.com

Autumn Witt Boyd
Harmon & Seidman LLC
P.O. Box 4932
Chattanooga, TN 37405
Tel 423-756-6013
Fax 423-752-1469
autumn@harmonseidman.com
*Of counsel*